MARGARET A. MCLETCHIE, Nevada Bar No. 10931
LEO S. WOLPERT, Nevada Bar No. 12658
MCLETCHIE LAW
602 South Tenth Street
Las Vegas, NV 89101
Telephone: (702) 728-5300
Fax: (702) 425-8220
Email: maggie@nvlitigation.com
*Counsel for Plaintiff EWU Media LLC*

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| EWU MEDIA, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>ANNE BOND, an individual<br><br>Defendant. | Case No.:<br><br>**PLAINTIFF'S COMPLAINT FOR:**<br><br>**(1) VIOLATIONS OF DIGITAL MILLENIUM COPYRIGHT ACT ("DMCA") 17 U.S.C. § 512(F)**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff EWU Media LLC ("Plaintiff" or "EWU Media"), by its undersigned attorneys, files this Amended Complaint against Defendant Anne Bond. In support thereof Plaintiff states and alleges as follows:

### INTRODUCTION

1.      Plaintiff EWU Media LLC brings this action to address the bad-faith copyright claim initiated by Defendant Anne Bond, under the guise of a DMCA takedown notice and privacy complaint, which have unjustly targeted copyrighted content owned by Plaintiff, leading to unwarranted demonetization, significant financial losses, and broader operational harm.

-1-

**PARTIES, JURISDICTION, AND VENUE**

2.      Plaintiff EWU Media LLC is a Nevada Domestic Limited-Liability Company having business address at 5050 Vista Blvd, Unit 105, Sparks, NV 89436.

3.      Upon information and belief, Defendant Anne Bond is a California citizen who resides in Eureka, California.

4.      The Court has personal jurisdiction over Defendant Bond because, on information and belief, Defendant Bond's conduct alleged herein occurred while she was located in the State of Nevada.

5.      The Court has jurisdiction over the Plaintiff's claims under 28 U.S.C. § 1331 because they arise under a federal statute, the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(f).

6.      Venue in this judicial district is proper because, upon information and belief, a substantial part of the acts and omissions giving rise to the claims occurred in this district.

**BACKGROUND FACTS**

7.      Plaintiff, EWU Media, is a media company that specializes in engaging audiences with true crime and mystery content, primarily through its Facebook and YouTube channels named, *inter alia*, "EXPLORE WITH US" and "EWU Crew." Plaintiff owns and operates these channels, which are significant sources of revenue, generating up to $30,000 per day from viewership and advertising.

8.      On August 30, 2025, Plaintiff posted a documentary titled "What Burning Man Doesn't Want You to See" on Youtube.com. *See* **EXHIBIT A** (hereinafter, "the Documentary").

9.      The Documentary is an original documentary on the annual Burning Man festival at Black Rock City, Nevada which focuses on hotly-debated, newsworthy topics: whether Burning Man lives up to its motto of "leave no trace" when conducting post-festival cleanup, and whether Burning Man's cleanup efforts are sufficient to remedy the environmental damage caused by the Burning Man festival.

10.     The Documentary contains an original selection and arrangement of new and preexisting videos, periodicals, articles, audio clips and other media, and adds EWU Media's original and creative editing, transitions, graphics, overlays, narration, captions, highlighting, commentary, research, analysis, interviews, and other original elements. It is comprised of EWU Media's news

-2-

reporting, in-depth critique, original video footage, original scripts and voice-overs, and analysis of these events, which are of public concern

11.    The Documentary also contains clips several publicly available third-party sources and media clips that EWU Media employs to relate the newsworthy story that the Burning Man festival, including Defendant Bond's publicly posted TikTok clips.

12.    Plaintiff invested heavily in promotion tied to the Documentary, including purchasing advertising (including but not limited to billboards, sign spinners, and Internet advertising) to promote the documentary and its corresponding website, StopBurningMan.org.

13.    On September 6, 2025, Defendant Bond submitted a "privacy complaint" (the "Privacy Complaint") to YouTube against the Documentary based on its inclusion of audiovisual clips from Defendant Bond's public TikTok channel. *See* **EXHIBIT B**

14.    On September 7, 2025, Plaintiff received a false copyright claim/DMCA takedown notice from YouTube (the "Copyright Complaint"), issued at the behest of Defendant, alleging copyright infringement. *See* **EXHIBIT C.**

15.     The Privacy Complaint was baseless, as Plaintiff's use of Defendant's TikTok videos, which were already posted in public, did not reveal any private identifying information about Defendant Bond.

16.    The Copyright Complaint was baseless, as Plaintiff's use of any purportedly copyrighted material in the Documentary constitutes fair use, as it is a transformative use of Defendant's video.

17.    Upon information and belief, Defendant Bond submitted the Privacy Complaint and Copyright Complaint while she was located in the State of Nevada to attend and/or work at the 2025 Burning Man festival.

18.    Defendant Bond was not entitled to issue either the Privacy Complaint or the Copyright Complaint, and could not have formed a good faith basis to issue such a notice.

19.    Defendant Bond's actions, constituting an abuse of the DMCA takedown process, have directly harmed Plaintiff financially.

20.    The Copyright Complaint and/or Privacy Complaint resulted in the Documentary being taken down from YouTube for 15 days (September 7-22, 2025) and a copyright strike being issued

-3-

against Plaintiffs.

21. Because the Documentary was taken down from YouTube, it was not playable as embedded on StopBurningMan.org.

22. Before being taken down, the Documentary was generating approximately $300 in revenue per day, peaking at $316.80 on September 3, 2025.

23. During the 15-day period in which the Documentary was taken down, it generated $0 in revenue.

24. After the Documentary was reinstated, revenue only recovered to approximately $25 per day.

25. Upon information and belief, this approximately 90% loss in daily revenue was directly caused by the Documentary's 15-day absence from YouTube.

26. The Documentary's takedown further deprived EWU Media LLC of its ability to monetize the Documentary during the Burning Man festival and cleanup, which is when yearly interest in Burning Man peaks.

27. The Documentary's takedown further disrupted EWU Media LLC's strategy, scheduling, and ad campaign execution.

### FIRST CAUSE OF ACTION

### VIOLATION OF DMCA 17 U.S.C. § 512(f)

28. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 27 as if fully set forth herein.

29. The DMCA bad faith notice and takedown provision under 17 U.S.C. § 512(f) provides that "[a]ny person who knowingly materially misrepresents under this section … that material or activity is infringing … shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer … who is injured by such misrepresentation as the result of … relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing."

30. By issuing the Privacy Complaint and Copyright Complaint, Defendant essentially claimed copyright in content that is plainly fair use—a knowing and material misrepresentation.

-4-

31.     Defendant therefore knowingly and materially made misrepresentations to YouTube stating that Plaintiff's video was infringing intellectual property rights owned by Defendant under 17 U.S.C. § 512(f).

32.     In reliance on Defendant's misrepresentations, YouTube removed and disabled access to the Documentary from September 7, 2025, to September 22, 2025, preventing the Documentary from generating any revenue between those dates, and reducing the Documentary's revenue by approximately 90% after those dates.

33.     Plaintiff seeks damages and attorneys' fees for Defendant's bad-faith conduct under 17 U.S.C. § 512(f).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for relief as follows:

a.   For compensatory damages in an amount to be proven at trial;

b.   For punitive and exemplary damages;

c.   For reasonable attorney's fees and cost of suit incurred herein;

d.   For prejudgment interest at the legal rate; and,

e.   For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 3rd day of October, 2025.

MCLETCHIE LAW

*/s/ Leo S. Wolpert*
MARGARET A. MCLETCHIE, Nevada Bar No. 10931
LEO S. WOLPERT, Nevada Bar No. 12658
MCLETCHIE LAW
602 South Tenth Street
Las Vegas, NV 89101
Telephone: (702) 728-5300
Fax: (702) 425-8220
Email: maggie@nvlitigation.com
*Counsel for Plaintiff EWU Media LLC*

-5-