Christopher W. Mixson, Esq.
Nevada Bar No. 10685
**KEMP JONES, LLP**
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone: (702) 385-6000
Fax: (702) 385-6001
Email: c.mixson@kempjones.com

David S. Levin (*pro hac vice*)
California Bar No. 156336
**LEVIN LAW FIRM**
405 Sherman Ave
Palo Alto, California 94306-1827
Telephone: (650) 858-8500
david@levinlawfirm.com

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| EWU MEDIA, LLC, a Nevada limited liability company, | Case No.: 3:25-cv-00548-ART-CSD |
| Plaintiff, | **DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE** |
| vs. | |
| ANNE BOND, an individual, | |
| Defendant. | |

**INTRODUCTION**

Plaintiff has failed to establish venue in this Court, and Defendant Anne Bond ("Defendant") hereby moves to dismiss the Complaint of EWU Media, LLC's ("Plaintiff") under F.R.Civ.P. 12(b)(3). Specifically, Plaintiff has failed to establish that "a substantial part of the events or omissions giving rise to the claim occurred" in Nevada as required under 28 U.S.C. § 1391(b)(2). Since Plaintiff has not established venue in this Court, the Complaint should be dismissed under F.R.Civ.P. 12(b)(3) and §1406(a).

Alternatively, Defendant moves to transfer this case to the Northern District of California under 28 U.S.C. § 1404(c) based on the underlying circumstances of the case. Those

circumstances include the convenience of the Defendant and a significant third-party witness to both the liability and damages parts of this case.   Other circumstances include the tenuous connection between Nevada and the underlying events giving rise to Plaintiff's claim.   An examination and balance of the relevant factors support Defendant's Motion to transfer the case to the Northern District of California.

ARGUMENT

**I.       Plaintiff Failed to Establish Venue in this Court Under §1391(b) and its Complaint Should be Dismissed Pursuant to §1406(a).**

When a defendant challenges the venue asserted in an action, the plaintiff bears the burden of establishing that venue exists in the forum court.   *Nat'l Fitness Co. v. Procore Labs, LLC*, 2011 WL 2463296, *1 (D.Nev. June 20, 2011) (citing *Piedmont Label Co. v. Sun Garden Parking Co.*, 598 F.2d 491, 496 (9th Cir. 1979)).   The court need not accept the pleadings as true and may consider facts outside of the pleadings in determining the propriety of venue. *See Kukje Hwajee Ins. Co., Ltd., v. M/V Hyundai Liberty*, 408 F.3d 1250, 1254 (9th Cir. 2005).

**A.       Defendant's Residence is California, Not Nevada.**

Section 1391(b) establishes two main paths for establishing venue in a federal judicial District.  The most direct is to sue a defendant in the District where the defendant resides.  In that case, venue would be established under Section 1391(b)(1).   That did not happen here.

Defendant lives in Eureka, California in the Northern District of California and has done so for almost twenty years.  *See* Declaration of Defendant Anne Bond, attached hereto as Exhibit 1 ("Bond Decl.") at ¶ 2   Defendant is a tenant at residential property in Eureka, California. *Id*. Defendant's only contact with Nevada is that the worksite for one of her California employers is in northern Nevada.  While in Nevada, she lives in temporary employee housing.  *Id*.  Plaintiff acknowledges that Defendant is a resident of California.  (*See* Complaint ECF No. 3-1 at ¶ 3.)

**B.      No Substantial Events or Omissions Giving Rise to Plaintiff's Claim Occurred in Nevada.**

The other path to establish venue is for Plaintiff to prove that "a substantial part of the events or omissions giving rise to the claim occurred" in the forum district.   28 U.S.C. §1391(b)(2).[1]   Unlike other sections of Title 28 or federal statutes that contain specific venue references (*e.g.* 28 U.S. C. § 1400 which establishes special federal venue for copyright and patent infringement actions), the Digital Millennium Copyright Protection Act 17 U.S.C. § 512 ("DMCA") does not refer to venue for actions under Section 512(f).   Therefore, Plaintiff's only path to establish venue in this District is through § 1391(b)(2) and  the substantial part of the events or omissions test.

In assessing the relevant or omissions under §1391(b)(2), one must pay attention to the word "substantial."  "Although a 'substantial' portion of the events may take place in several districts, district courts are cautioned to 'take seriously the adjective 'substantial.'''' *National Casualty Co., v. Burns & Wilcox Ltd.*, 2020 WL 4039119, *14 (D. Ariz. 2020) (citing *Gulf Ins. Co. v. Glassbrenner*, 417 F.3d 353, 356-57 (2d. Cir. 2005)). Because courts must "construe the venue statute strictly, "significant events or omissions <u>material</u> to the plaintiff's claim must have occurred in the district in question," *Id*. (emphasis in original). "It would be error, for instance, to treat the venue statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries." *Id*. In essence, proper analysis of substantiality under §1391(b)(2) involves a two-step test: (1) "the court should identify the nature of the claim and the acts or omissions that the plaintiff alleges give rise to those claims; and (2) the court should determine whether a substantial part of those acts or omissions occurred in the district where the suit was filed." *Ultimate Creations, Inc. v. Wright*, 2006 WL 2547324, *4 (D. Ariz. 2006).

---

[1] The second half of §1391(b)(2) (venue in a district where a substantial part of the subject <u>property</u> is located) is inapplicable here because this case does not concern property as that term is used.  The other "catchall" venue provision of § 1391(b)(3) is similarly inapplicable because there is a court where the "action may otherwise be brought," namely, the Northern District of California, as set forth in Section I.A.

Plaintiff devotes much of its Complaint to talking about the annual Burning Man event that occurs in Nevada's remote Black Rock Desert High Rock Canyon National Conservation Area. But all "substantial events and omissions" related to the Complaint's single cause of action occurred outside of Nevada. Plaintiff's claim relates to what happened at the corporate offices of YouTube in San Bruno, California after it received Defendant's takedown request. *See e.g.* Complaint, ECF No. 3-1 at ¶ 13 ("On September 6, 2025, Defendant Bond submitted a "privacy complaint" … to YouTube….").

Putting aside the Plaintiff's background references to the Burning Man festival, the only physical Nevada "event" referenced in Plaintiff's Complaint is in para. 17 where Plaintiff alleges that Plaintiff sent her takedown request to YouTube while she was present in Nevada. (ECF No. 3-1 Complaint at ¶ 17.)

Following receipt of Defendant's communication, YouTube would have undertaken its own internal procedures to evaluate Defendant's copyright and privacy claims. Thereafter, YouTube notified Plaintiff and temporarily removed Plaintiff's video from its platform the DMCA. (ECF No. 3-1, Complaint ¶ 14, 20; Ex. B, C.) Evidence that YouTube's evaluation and response occurred in California can be found in the communications from YouTube that Plaintiff attached as exhibits to its Complaint. The address reflected on YouTube's correspondence is 901 Cherry Ave., San Bruno, CA 94066. (ECF No. 3-1, Complaint at ¶ 14 and Exhibit C.)

As noted above, in assessing whether the forum District is a location where "substantial events or omissions giving rise to the claim occurred" under § 1391(b)(2), a court must consider the nature of the action asserted and injury alleged by Plaintiff. *Hudnall v. Panola County*, No. 2:06-cv-0490-RCJ (D. Nev. January 5, 2007) *citing: Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994). Here, Plaintiff alleged that Defendant's takedown request knowingly contained a material misrepresentation under DMCA § 512(f). (ECF No. 3-1, Complaint, ¶¶ 28-33. "Substantial events" related to Plaintiff's claim must have occurred in Nevada for this case to be litigated in this Court.

.

4

The location from which a plaintiff sends her takedown request is not material or even relevant to whether her actions give rise to a claim under the DMCA. The effect of Defendant's takedown request would have been the same if she had sent it from her home in Eureka, CA, while crossing the state line between Nevada and California, or for that matter while on a WiFi- enabled airplane flying over the Pacific Ocean.  Nothing in the DMCA attaches any importance to the location from which a takedown request is sent.

While Defendant's takedown request may have initiated the chain of events at issue here, the transmission of it from Nevada or anywhere else in particular is not a substantial event according to the elements of a claim under the DMCA .  Hitting "send" in Nevada was like the flapping butterfly wings in the butterfly effect.  It may have a causal connection to the hurricane that occurred in Texas.  But it was not a "substantial event" such that venue would be proper in Brazil where it happened.

Again, Plaintiff's only allegation of any  event that occurred in Nevada was that Defendant pressed "send" in her communication to YouTube when she was working at her Nevada worksite. ECF No. 3-1, Complaint at ¶ 17.  While the communication may nominally have been sent from Nevada, the "significant events" in the case started only thereafter, when YouTube received and took action, and all of them occurred in California.  Defendant sent her request to YouTube from Nevada because she was temporarily working in Nevada and would not be returning to California for over a month.  (*See* Bond Decl., ¶ 7.)

But no significance, legal or otherwise, attaches to the fact that Defendant transmitted her request to YouTube from Nevada, as opposed to from California, or even from over the Pacific Ocean while in an airplane.  As this Court has observed, only events directly giving rise to a claim are relevant to the "substantial part" test of § 1391(b)(2).  *See*, *Flynn v. Liner, Grode Stein, Yankelevitz, Sunshine, Regenstrief & Taylor LLP*, 2010 WL 4121886, at *3 (D.Nev. Oct. 15, 2010) (*citing Jenkins Brick Co. v. Brenner*, 321 F.3d 1366, 1371 (11th Cir. 2003) ("[o]nly the events that directly give rise to a claim are relevant [to venue analysis under § 1391(b)(2)]")).  Here, the "significant event"  was not Defendant's sending the takedown request from Nevada.  Instead, the

significant relevant events occurred upon YouTube's <u>receipt</u> of the request in California and subsequent acts that also occurred in California.

Defendant sending the takedown request from Nevada is a small part of the story. The takedown request could have been sent from anywhere in the world and the substantive allegations in the Complaint would have been exactly the same. As the *National Casualty* Court said about some of the Arizona-based contacts in that case that were insufficient to establish venue in Arizona, Plaintiff's sending the takedown request may form "a part of the story, [but] the significant events took place elsewhere." *National Casualty,* 2020 WL 4039119 at *14. The same is true here.

In examining "whether the events or omissions are sufficiently substantial to support venue under § 1391(b)(2), a court should not focus only on where the story began. Rather, it should review the entire sequence of events underlying the claim. *See Mitrano v. Hawes*, 377 F. 3d 402, 405 (4th Cir. 2004) (citing *Uffner v. La Reunion Francaise, S.A*., 244 F.3d 38, 42 (1st Cir.2001);(court should look to "the entire sequence of events underlying the claim, and focus on the defendant's (rather than the plaintiffs') actions." (citations omitted)).

In this case, the substantial event is YouTube's *receipt* of the request in California and YouTube's *actions* in California in response to Defendant's request. The substantial events that underlie Plaintiff's single claim for relief occurred following YouTube's receipt of the request at its headquarters in San Bruno, California where its internal review, consideration and processing of Bond's request, and its ultimate decision to take action occurred.

The insignificance of the location from which Defendant sent her notice is highlighted by the fact that had the notice not been received, for whatever reason, Plaintiff would not have been damaged. It was <u>receipt</u> of the notice in California that triggered Plaintiff's claim. See B*ates v. C&S Adjusters, Inc.,* 980 F.2d 865, 868 (2d Cir.1992) (in analyzing proper venue of an action for violation of the Fair Debt Collection Practices Act, the court noted, "This harm does not occur until receipt of the debt collection notice. Indeed, if the notice were lost in the mail, it is unlikely

that a violation of the act would have occurred). [2]

Plaintiff may argue that it suffered injury in Nevada and that the injury is part of the events giving rise to its claim. But where the effects of the alleged harm are felt is immaterial for venue purposes. *Jenkins Brick Co,* 321 F.3d at 1371 ("[T]he [venue] statute directs the Court to consider 'events or omissions," not impact.); *see also Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("The proper question is not where a plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."). Thus, even if Plaintiff argues that damages suffered in Nevada can establish injury in Nevada, that injury is not a substantial part of the events "giving rise" to the claim under § 1391(b)(2).

Any loss of revenue alleged by Plaintiff due to YouTube's temporary takedown has no connection to Nevada. An analogous case is *Trois v. Apple Tree Auction Center*, 882 F.3d 485, 490-94 (5th Cir. 2018) in which the Court of Appeals held that defendant's fraudulent misrepresentations on telephone calls that were placed <u>from</u> Ohio <u>to</u> Texas did not establish venue in Ohio. The Court found venue to be proper in the Western District of Texas under § 1391(b)(2) because the fraudulent misrepresentations were directed to and received in Texas. *Id*. This notwithstanding that an accompanying breach of contract claim was properly dismissed by the trial court for lack of venue because the contract had been negotiated in Ohio. *Id*. at 494. Similarly, here Defendant's communication was directed to YouTube in California and caused further and substantial acts to occur in California.

It is important to distinguish between "minimum contacts" for personal jurisdiction and due process purposes with the location of "substantial events or omissions giving rise to the claim." for purposes of venue pursuant to § 1391(b)(2). Under § 1391(b)(2), the emphasis is on the quality and nature of those contacts or events in relation to a plaintiff's claim. Here, Plaintiff might argue that Defendant's various contacts in Nevada, including the significant number of days she spends

---

[2] Defendant does not concede Plaintiff's assertion of this Court's personal jurisdiction over Defendant and reserves her right to challenge such assertion at a later point, if necessary. Nothing herein should be construed to establish Defendant's "waiver residency" in Nevada for venue purposes Section 1391(a) or otherwise.

working in Nevada, establish venue in Nevada. But that confuses "minimum contacts" jurisdiction analysis with the "substantial events" analysis required under § 1391(b)(2).

Courts have found that it was error to treat "substantial events" under § 1391(b)(2) as mirroring the "minimum contacts" test utilized to determine a court's personal jurisdiction over a party. *See Jenkins Brick*, 321 F.3d at 1372; *Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 294 (3d. Cir. 1994); cf. *United States ex rel Rudnick v. Laird*, 412 F.2d 16, 20 (2d Cir. 1969) ("the concepts of personal jurisdiction and venue are closely related but nonetheless distinct."). In *Cottman Transmission Systems,* plaintiff sued defendant in the Eastern District of Pennsylvania, claiming that defendant (based in Michigan) failed to make payments and return materials to plaintiff in Pennsylvania. *Id.* at 292-93. In determining that Michigan, not Pennsylvania was the proper venue, the Court noted that the omissions of which plaintiff complained–the failure to return materials and to remit payments–occurred in Michigan, not Pennsylvania. *Id*. at 295. Even though the result was plaintiff's non-receipt of those items in Pennsylvania, the omissions bringing about that result occurred in Michigan. *Id*. In this case, Plaintiff's alleged loss of revenue in Nevada or any state does not matter because the significant event(s) that caused Plaintiff's alleged injury occurred outside Nevada.

Finally, Plaintiff's contention that where one is physically standing when she hits the "send" button on her device is sufficient to establish venue would lead to absurd outcomes. Back to the WiFi equipped airplane flying over the Pacific Ocean, Defendant could have been dragged to the District of Guam if her work had taken her overseas under Plaintiff's application of § 1391(b)(2). Statutes cannot be construed in such a way as to lead to absurd outcomes or results. *AZG Limited Partnership v. Dickinson Wright PLLC*, 574 P.3d 929, 933-934, 141 Nev. Adv. Op. 37 (Nev., Aug. 21, 2025).

**C.      The Proper Remedy is Dismissal of the Case.**

Plaintiff's Complaint should be dismissed for lack of venue. While the Court has the discretion, "in the interest of justice," to transfer venue to another District under § 1406(a), no

justice would be served by allowing Plaintiff's Complaint to survive. *See Cook v. Fox*, 537 F.2d 370, 371 (9th Cir. 1976).

Plaintiff's lawsuit appears designed to punish the Defendant by forcing her to pay money for causing a brief takedown of Plaintiff's video . Filing the case in Nevada, instead of where she lived in California, appears calculated to maximize that punishment by making Defendant spend additional money in travel expenses while losing money for missed work. In trying to establish venue in Nevada, Plaintiff exploits the fact that Defendant was working for minimum wage at a remote Nevada worksite when Plaintiff published its video that violated her rights, and Defendant had no choice but to send her takedown request from Nevada. Under the circumstances, Plaintiff is hardly entitled to invoke "the interests of justice." Plaintiff's strategy to maximize the economic hardship on Defendant should not be rewarded by allowing its Complaint to avoid dismissal.

**II.      Alternatively, the Convenience of Defendant and Witnesses Supports Transferring Venue to the Northern District of California.**

If not dismissed outright as requested in Section I, this case should be transferred to the Northern District of California. Defendant's residence and place of domicile is Eureka, California. Venue, therefore, exists in the Northern District of California. This fact is not disputed (ECF No. 3-1, Complaint at ¶ 3), and this case could have been filed there originally.

But it is not just Defendant's residence that supports the transfer of this case. There is a third and equally important entity that will almost certainly be the most important witness for Plaintiff, Defendant, the jury, and the court: YouTube.

Plaintiff refers to itself as a "high value content partner to YouTube." (Bond Decl. at ¶ 11.) Plaintiff claims that it "has well over 6.9 million subscribers with over 1.5 billion views." *Id*. Plaintiff claims to generate up to $30,000 per day from its videos, and that the 15-day take down of one of its videos by YouTube caused it to suffer damages. (ECF No. 3-1, Complaint ¶¶ 7, 32.)

As emphasized in Section I, the actions taken by YouTube are "a substantial part of the events or omissions giving rise to the claim" under § 1391(b)(2) and are integral to this case. YouTube is also the key witness able to dispute or confirm Plaintiff's damages allegations. As

explained below, Defendant intends to seek discovery of YouTube's financial accounting documents that reflect how much YouTube paid to Plaintiff for the subject video and for other similar videos. Plaintiff's entire economic relationship with YouTube is relevant to the sweeping damages claims that Plaintiff alleges. If Defendant can establish that Plaintiff's damages are insignificant, the case could well be resolved without having to address some of the thornier copyright law issues.

YouTube's offices are located in San Bruno, California which is in the Northern District of California. Thus, transferring this case to that District serves the convenience not only of the Defendant but also of the major fact witness in the case.

**A.      This Court has the Discretion toTransfer this Case to the More Convenient Forum.**

Title 28 U.S.C. § 1404(a) provides, "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A district court has broad discretion to adjudicate motions for transfer on a case-by-case basis, considering factors of convenience and fairness. *See Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 639 (9th Cir. 1988). Defendant acknowledges that, unlike its Motion to Dismiss for lack of venue where Plaintiff has the burden to defend its choice of venue, Defendant bears the burden to show that the present forum is inconvenient. *See Decker Coal Co. v. Commonwealth Edison*, 805 F. 2d 834, 843 (9th Cir. 1986).

"In determining whether to grant a motion to transfer, the court conducts a two-part analysis. First, the court must determine if the action could have been brought in the court to which the transfer is sought, and second, determine whether transfer is in the convenience of the parties and witnesses, and in the interest of justice." *La Michoacana Plus Ice Cream Parlor Corp. v. Windy City Paletas, Inc.*, 2024 WL 1376987, *2 (D. Nev. March 31, 2024) (*citing Malcolm v. Acrylic Tank Mfg. Inc.*, 2019 WL 1923633, at *2 (D. Nev. Apr. 30, 2019)).

There is no dispute that Defendant satisfies the first part. The action could have been

brought in the Northern District of California under § 1391(b)(1).  (*See* Bond Decl. ¶ 2.)  As detailed below, Defendant also satisfies the second part about convenience and interest of justice.

**B.    A Balance of the Eight Factors from Jones v. GNC Franchising Favors Transfer to California.**

In *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000), the Ninth Circuit set forth eight factors for the District Court to apply in exercising its discretion under Section 1404(a) ("Factor"):

> A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case.  For example, the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

(citations omitted). After applying each of Factor to the underlying claim and facts in this case, five of the eight *Jones* Factors (First, Second, Fifth, Seventh and Eighth) favor transferring the case to California.  Only one *Jones* Factor (Third) favors keeping venue in Nevada.  Two of the Factors (Fourth and Sixth) are neutral.  Therefore, a balance of the *Jones* Factors supports Defendant's alternative Motion to transfer venue to California.

**1.    Relevant Agreements and Locations**

There are no agreements between the parties.  Plaintiff used Defendant's media content without permission and that unpermitted use forms the heart of the Complaint and Defendant's intended cross-complaint.

There are, however, relevant agreements between both parties and YouTube.  Defendant has not yet had the opportunity to review financial or other agreements between Plaintiff and YouTube. But YouTube is a California based company.  Defendant presumes that the agreements were negotiated in California.  The agreements likely have choice of venue provisions that select the Northern District of California, and likely have choice of law provisions that select the laws of the State of California.

11

Defendant's presumptions are based on YouTube's public facing Terms of Service (*https://www.youtube.com/t/terms*) that recite the Northern District of California as the venue for litigating claims: "All claims arising out of or relating to these terms or the Service will be governed by California law, except California's conflict of laws rules, and will be litigated exclusively in the federal or state courts of Santa Clara County, California, USA. You and YouTube consent to personal jurisdiction in those courts."[3]

Agreements between Plaintiff and YouTube as well as YouTube's connection to California tilts this Factor towards transferring this case to the Northern District of California. Also, the fact that YouTube expressly consents to jurisdiction of the Northern District of California court is important to the seventh *Jones* Factor as noted below.

### 2.      State Most Familiar with Governing Law.

Defendant acknowledges that the District Courts in both Nevada and California are equally familiar with applicable United States copyright law and the DMCA issues in this case. But, if necessary, Defendant intends to bring a cross-complaint that will interject California privacy and publicity laws, among others, into this litigation.   A District Court in California is more likely to have greater familiarity with its state's privacy and publicity laws.

California law recognizes a person's right to control how a third-party uses her name, voice, image or likeness. It prohibits commercial actors like Plaintiff from using a California citizen's name, voice or likeness "in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods, or services, without that person's prior consent."  Cal. Civ. Code § 3344(a). The California statute sets minimum damages for any violation and gives a cross-plaintiff the right to claim "any profits from the unauthorized use." *Id*.

Defendant fully intends to file a cross-complaint if Plaintiff's case survives this Motion to

---

[3] Defendant requests that the Court take judicial notice of YouTube's Terms and Conditions published on its website under Evidence Rule 201(c) as the Terms "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

Dismiss, alleging that Plaintiff's subject video copies Defendant's name, voice and likeness repeatedly without her permission. (Bond Decl. ¶ 12.) Plaintiff's video unlawfully copies Defendant's media content in at least 24 separate places in the video. *Id*. Much of the media content was images of Defendant's face and the sound of her voice as she narrated her own media. (Bond Decl. ¶ 13.)

As a result, Defendant's name, voice and likeness appear so extensively and frequently in Plaintiff's video that it appears that Defendant is somehow associated with the Plaintiff's video and its producers. Plaintiff also makes it appear that Defendant is supportive of Plaintiff's perspective in the video which is false. (*Id.*) Defendant has been damaged as a result of Plaintiff's abuse of her name, likeness and rights to publicity under California law.

### 3. Plaintiff's Choice of Forum.

Defendant acknowledges that Plaintiff's selection of Nevada as its chosen forum is a factor entitled to some deference. But that deference should be minimal since there is little connection between Nevada and the substantial events and omissions giving rise to Plaintiff's claim.

The Ninth Circuit explained in *Lou v. Belzberg*, 834 F. 2d 730 (9th Cir. 1987) that a plaintiff's contacts with the forum and the connection between the forum and the operative facts are more important than plaintiff's choice of venue.

> In judging the weight to be accorded Lou's choice of forum, consideration must be given to the extent of both Lou's and the Belzbergs' contacts with the forum, including those relating to Lou's cause of action. If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, Lou's choice is entitled to only minimal consideration.

*Id*. at 739 (citing *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir.1968)). While this Third *Jones* Factor nominally favors Nevada, the weight of this Factor is minimal. As discussed below under the Fifth *Jones* Factor, there are no material connections between Nevada and the acts and omissions giving rise to Plaintiff's claims. Therefore, the Third *Jones* Factor favors the forum District, but does not deserve very much weight.

### 4. Respective Parties Contacts with the Forum.

Defendant has minimal contacts with Nevada. Defendant's only connection to Nevada is

that her California based employer produces an annual event in Nevada, and she travels to that worksite in Nevada to temporarily work at the event. While in Nevada, she lives in employer provided temporary housing. As soon as her work contract is finished, she returns to her home in California. (Bond Decl. ¶ 4.)

The fact that Defendant spends temporary periods at a Nevada worksite is a contact with Nevada. But Defendant's contacts with Nevada do not make this forum convenient as that term is used in § 1404(a). For Defendant, it is the opposite. Defendant's worksite in Nevada is the remote Black Rock Desert High Rock Canyon NCA. (Bond Decl. ¶ 6.) Travel to and from this part of Nevada is difficult and time consuming. *Id*. Communication resources at the worksite are also limited. *Id*. Thus, Defendant's days spent at a remote Nevada worksite should not count as "contacts" for the purpose of judging whether Nevada is inconvenient for Defendant.

Based on the pleadings, it is hard to assess and measure Plaintiff's true contacts with Nevada. Based on Plaintiff's Complaint and communications, Plaintiff is in the business of generating viewership on the internet by producing videos that reach a nationwide (perhaps worldwide) audience. Plaintiff's attorney claims that "Several [of Plaintiff's] videos have garnered over 30 million views, and over 50 of its videos have 10 to 30 million views." (Bond Decl. ¶ 11.) Apparently, various internet platforms like YouTube and Facebook can pay Plaintiff "$30,000 per day from viewership and advertising." (ECF No. 3-1, Complaint at ¶ 7.)

Plaintiff's Nevada internet viewership is unknown. If Plaintiff's counting Defendant's Nevada viewers as the basis for her contacts with Nevada, those contacts would appear minor compared to Plaintiff's contacts with a California forum based on California viewers. Based on the populations of the two states, Defendant has twelve California viewers for every one in Nevada.

Plaintiff will likely cite its formation in Nevada as evidence of its contacts with the Nevada forum. But an entity's state of formation is not relevant to a determination of whether that state is a convenient litigation forum for a particular case. (Google LLC which owns and operates YouTube is a Delaware entity). Many companies choose to organize in Nevada for favorable tax or other business reasons that have nothing to do with their connection to Nevada.

Overall, the Fourth Factor is neutral.  Both parties have some contacts with Nevada.  But the nature of those contacts, on both sides, has little to do with whether this Court is a convenient forum for this litigation.  And in Defendant's case, her time at a remote worksite in Nevada is particularly inapposite to whether Nevada is a convenient place for her to litigate.

**5.    Relationship Between the Forum and Plaintiff's Claim.**

Separate from the quantum of the parties' contacts with Nevada, the Fifth Factor examines whether any of those contacts constitute or are related to the events that give rise to Plaintiff's claim.  Since the answer is a clear "no," the Fifth Factor favors Defendant's Motion to transfer.

Plaintiff's single cause of action is that Defendant wrongfully requested that YouTube take down Plaintiff's video because the video copied her media content and personal likeness without her permission.  In Section I above, Defendant demonstrates that the substantial events giving rise to the claim occurred within YouTube's San Bruno, CA offices in the Northern District of California.  The single most substantial event in this case–YouTube's removal of Plaintiff's video– occurred in California.  (ECF No. 3-1, Complaint  ¶ 14 and Exhibit C.)  Plaintiff references communication from YouTube about this temporary removal, and the communication lists 901 Cherry Ave, San Bruno, CA 94066 as the sender's location. Id.

The only Nevada contact related to Defendant's cause of action is alleged in Complaint Paragraph 17 where Plaintiff alleges that Defendant "submitted" (i.e. hit the "send" button on her device) on her communication to YouTube while she was working at a Nevada worksite.  As observed in Section I above, even if Defendant did send her takedown request from Nevada, that fact is irrelevant to the copyright, privacy and publicity issues anchoring this case.  Defendant could have hit "send" and submitted her request from anywhere without impacting the legal issues in this case. And, as explained above, allowing the venue in a DMCA takedown related lawsuit to be based on where the requester was located when sending the request could lead to absurd results.

In this case, Defendant's Nevada location when communicating with YouTube is incidental to Plaintiff's cause of action.  Furthermore, Defendant's Nevada location has absolutely nothing to do with the facts from a forthcoming cross-complaint, if necessary, alleging the

violation of publicity rights under California Civil Code § 3344.  Therefore, this Fifth Factor favors transferring venue to California.

Also as noted in Section I above, Defendant expects Plaintiff to argue that a Nevada connection exists because Plaintiff's video was recorded in Nevada and the subject concerns Nevada public lands.  But the content of both parties' videos and their recording locations are wholly irrelevant to this litigation.  Plaintiff's video and Defendant's media content could be funny cat videos recorded at the local cat rescue for all that it matters to the claims raised in the Complaint.  Such easy content substitution undermines any argument that Plaintiff's Nevada subject matter has any relevance to the legal issues raised by the pleadings and this Motion.

### 6. Cost Differential Between the Two Forums.

Plaintiff cannot claim that San Jose, CA is a more or less expensive litigation forum than Las Vegas, NV, particularly when it is highly likely that, by using YouTube's services, Plaintiff has already availed itself of jurisdiction and venue in the Northern District of California.  The presence of YouTube in the Northern District of California, as discussed  in other Factors, surely makes California more convenient for YouTube and its witnesses.  Defendant contends that this Sixth Factor is therefore neutral.

### 7. Availability of Compulsory Process to Compel Non-Party Witnesses.

For myriad reasons, YouTube is the most important witness in this case after the Plaintiff and Defendant.   YouTube is a potential–perhaps sole–witness about the timeline and events following the takedown request.  YouTube is the key witness regarding Plaintiff's damages allegations in its Complaint and Defendant's monetary claim in her forthcoming cross-complaint for the profit earned as a result of Plaintiff's interference with her publicity rights.  YouTube's California location and Plaintiff's consent to jurisdiction in the Northern District of California tilts the Seventh Factor in favor of transfer.

If this venue Motion is denied, and/or if Defendant files her cross-claims against Plaintiff, Defendant will seek discovery from YouTube to test Plaintiff's averment that it earns "$30,000 per day from viewership and advertising"  (ECF No. 3-1, Complaint at ¶ 7.)  More specifically,

Plaintiff alleges that it lost 90% percent of its expected revenue from the video due to the 15-day takedown request by Defendant. *Id*. at ¶ 32. The witness who can independently verify or refute Defendant's allegations is YouTube.

If YouTube is an "unwilling" third-party witness as contemplated under the Seventh Factor, Defendant has not determined whether this Nevada Court can direct "compulsory process to compel" against a California witness in these circumstances. But if the case is transferred to the Northern District of California, that issue is moot. As discussed under the First Factor, YouTube has already consented to the jurisdiction of the San Jose Division of the Northern District of California. Even without such consent, the California court has jurisdiction over YouTube since it operates within its District. Thus, the Seventh Factor favors Defendant's Motion to transfer venue.

**8.      Ease of Access to Sources of Proof.**

Overall, the sources of proof in this case are Plaintiff, Defendant and the third-party witness YouTube. With ease, a party can take discovery of the other party regardless of which U.S. District Court is overseeing the case. While it will be difficult for Defendant to travel to Nevada for hearings and trial, Defendant would be accessible for discovery by giving notice to her counsel.

The same cannot be said for YouTube. YouTube may challenge this Nevada Court's jurisdiction over it, and that would make access to its evidence difficult to compel. Even if jurisdiction over YouTube is not an issue, it will be much easier for the parties to access YouTube documents and witnesses from the District in California where YouTube operates. Therefore, the Eight Factor favors a transfer of venue.

As explained throughout this Motion, almost nothing relevant to this case occurred in Nevada, and there are absolutely no "facts on the ground" to discover in Nevada. The relevant agreements and financial documents reside at YouTube which is located in California. YouTube, and likely Plaintiff, have consented to the jurisdiction and venue of the California Court. Since almost all of the sources of proof in this case are located in California, it will be easier to access that proof from a Court in California as compared to Nevada. Thus, the Eight Factor favors

Defendant's Motion to transfer venue.

**CONCLUSION**

For the reasons stated, Defendant requests that the Court dismiss this Complaint, or in the alternative, transfer the case to the Northern District of California.

DATED this 13th day of March, 2026

Respectfully submitted,

**KEMP JONES, LLP**

 _/s/ Chris Mixson_
Christopher W. Mixson, Esq.
Nevada Bar No. 10685
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

David S. Levin (*pro hac vice*)
California Bar No. 156336
**LEVIN LAW FIRM**
405 Sherman Ave
Palo Alto, California 94306-1827

*Attorneys for Defendant*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 13, 2026, a true and correct copy of **DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE** was served via the United States District Court CM/ECF system on all counsel of record who have enrolled in this ECF system.

*/s/     Ali Lott*
An employee of Kemp Jones, LLP

19