# EXHIBIT 1

Declaration of Anne Bond

Christopher W. Mixson, Esq.
Nevada Bar No. 10685
**KEMP JONES, LLP**
3800 Howard Hughes Parkway, 17th
Floor Las Vegas, Nevada 89169
Telephone: (702) 385-6000
Fax: (702) 385-6001
Email: c.mixson@kempjones.com

David S. Levin (*pro hac vice*)
California Bar No. 156336
**LEVIN LAW FIRM**
405 Sherman Ave
Palo Alto, California 94306-1827
Telephone: (650) 858-8500
david@levinlawfirm.com
morrim79@yahoo.com

*Attorneys for Burning Man Project*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

EWU MEDIA, LLC, a Nevada limited liability company,

Plaintiffs,

vs.

ANNE BOND, an individual,

Defendants.

Case No.: 3:25-cv-00548-ART-CSD

**DECLARATION OF ANNE BOND**

I, Anne Bond, declare the following:

1. I am a Defendant in this action. If called as a witness, I would testify competently, based on personal knowledge, as follows.
2. I have lived in Northern California since my early childhood. I graduated from College of the Redwoods in Eureka, California and moved to Eureka shortly after in 2009. I have

lived continuously in Eureka since then, and I am currently a tenant in a lease of residential property in Eureka.

3. I physically spend about half of the year in Eureka. In the other months, I travel for my work. I work in event production management. I specialize in helping event producers manage waste streams and reduce the event's impact on its surroundings. I travel to various events at different times of the year. All of my clients and/or employers are California entities or individuals.

4. I work at one event that takes place in Nevada. For the past four years, I have worked at the Burning Man event in Northern Nevada. When I am in Nevada, I work only for Burning Man, and I live in temporary housing provided by Burning Man. I return to my residence in Eureka as soon as my work for Burning Man is finished.

5. Last year, I worked a total of approximately 21 weeks for Burning Man in Nevada. In 2026, I project that I will work approximately 16 weeks for Burning Man in Nevada since I plan to reduce the amount of pre-event work that I have performed in the past.

6. My worksite in Nevada is the remote Black Rock High Rock NCA. Communication resources are limited at my worksite. It was difficult for me to communicate with my attorneys this past September when Plaintiff first contacted me. Travel to and from the Nevada worksite can also be difficult and time consuming. While I may be physically present in Nevada for a significant stretch of time during part of the year, it does not necessarily make Nevada a convenient litigation forum for me.

7. The remote location of my worksite in Nevada is the reason why I first communicated with YouTube while in Nevada. I could not go home on the weekends and conduct my personal business at home. In my mind, the location where I sent my email to YouTube had nothing to do with Nevada. I could just have easily waited a couple of weeks and sent it when I was back home in California.

8. My work for Burning Man in Nevada mostly involves helping to clean up after accidents and other events that impact the natural environment. For the past several years, I have

supported Burning Man's "playa restoration" team. For approximately six weeks after the end of the event, the team walks for miles across the event site to clean and restore the public land.

9. The playa restoration team works in harsh conditions for minimum wage. Team members draw motivation from each other and the importance of their work. In documenting the team and its culture, I have recorded many hours of video and audio content of my work and the work of my colleagues. I use this media content to produce my own videos that I publish mostly on Tik-Tok.

10. I regularly publish videos about my work and experience in the fields of event production and environmental stewardship. My videos have helped me to achieve some prominence in both fields and on social media platforms. I currently have around 34,000 followers on Tik-Tok.

11. My media footprint, however, is tiny compared to the Plaintiff.'s. I received and read a letter dated September 8, 2025 from one of Plaintiff's attorneys who described Plaintiff as a "prolific YouTube creator and media production company." Plaintiff boasted to me in the letter that it "has millions of followers and its original video content has millions of views. It is a high value content partner to YouTube. [Plaintiff] has well over 6.9 million subscribers with over 1.5 billion views. Several [of Plaintiff's] videos have garnered over 30 million views, and over 50 of its videos have 10 to 30 million views."

12. In Plaintiff's YouTube video that is subject of this lawsuit, plaintiff extensively copied my media content that I recorded and produced. Without my permission, Plaintiff's video incorporates my content in 24 separate instances.

13. Much of the copied media content contains my name, my voice and my likeness. I appear repeatedly throughout Plaintiff's video. My name, voice and likeness appear so extensively and frequently in the video that it appears that I am somehow associated with the video and its producers and that I support the narrative of the video. I am not associated with Plaintiffs, and I do not support the narrative of its video.

14. While my media footprint is microscopic compared to Plaintiff's, my social media presence, especially my name, likeness and reputation, are important for my professional development and career success. I have suffered damages resulting from Plaintiff's knowing misuse of my name, voice and likeness for the purpose of selling products or services without my consent. If this case proceeds, I likely will file a cross-complaint against Plaintiff for damages under California Civil Code § 3344 for infringing my publicity rights.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this Declaration was executed on March 10th, in Eureka, California.

*/s/ Anne Bond*

Anne Bond